## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **Gunler Foods, Inc.** | § | **Case No. 14-33734 – H3** |
| | § | |
| **Debtor.** | § | **(Chapter 7)** |
| _____ | § | _____ |
| | § | |
| **Gunler Paper, Inc.** | § | **Case No. 14-34290 – H2** |
| | § | |
| **Debtor** | § | **(Chapter 7)** |
| _____ | § | _____ |
| | § | |
| **Gunler Real Estate, Inc.** | § | **Case No. 14-34287 – H4** |
| | § | |
| **Debtor** | § | **(Chapter 7)** |
| | § | |
| | § | **Jointly Administered** |
| | § | |

**EXPEDITED MOTION FOR ORDER (I) AUTHORIZING AND APPROVING SALE OF REAL AND PERSONAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES TO KRISTIN DISTRIBUTING COMPANY, AND (II) WAIVING THE 14-DAY STAY IMPOSED BY FEDERAL RULE OF BANKRUPTCY PROCEDURE 6004(h) WITH RESPECT TO THE SALE OF THE PROPERTY PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 6004(h) AND 11 U.S.C. § 105(A)**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**EXPEDITED RELIEF HAS BEEN REQUESTED.   IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE <u>LESS THAN 21 DAYS</u> TO ANSWER.  IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EXPEDITED CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Eva S. Engelhart ("Trustee"), chapter 7 trustee in the above captioned bankruptcy cases, hereby files her Expedited Motion for Order (I) Authorizing and Approving Sale of Real and Personal Property Free and Clear of Liens, Claims and Encumbrances to Kristin Distributing Company, and (II) Waiving the 14-day Stay Imposed by Federal Rule of Bankruptcy Procedure 6004(h) With Respect to the Sale of the Property ("Motion"), and in support thereof shows the Court as follows:

### I.
### <u>JURISDICTION AND VENUE</u>

1.      This Court has jurisdiction over this case and this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the standing order of reference of the United States District Court for the Northern District of Texas.   This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (M).  Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

### II.
### <u>FACTUAL BACKGROUND</u>

2.      On July 1, 2014, Gunler Foods, Inc. ("Foods") filed its voluntary petition under chapter 11 of title 11 of the United States Code (the "Code"), initiating Case No. 14-33734. Upon motion of Foods, the case was converted to chapter 7 of title 11 on July 31, 2014.

3.      On August 4, 2014, Gunler Real Estate, Inc. ("GRE") filed its voluntary petition under chapter 7 of title 11 of the Code.

4.      Also on August 4, 2014, Gunler Paper, Inc. ("Paper") filed its voluntary petition

under chapter 7 of title 11 of the Code.

5.      Foods, GRE and PAPER are individually and collectively referred to as the "Debtors."  Eva S. Engelhart, the appointed Chapter 7 Trustee for all three Debtors, filed a motion for joint administration of the Gunler Debtors' bankruptcy cases [Doc. no. 49].  On September 16, 2014, this Court granted the Trustee's motion for joint administration of the Debtors' bankruptcy cases [Doc. no. 56].

6.      Compass Bank ("Compass"), the secured lender of the Debtors, is owed not less than $9,200,000 evidence by three (3) promissory notes.  The promissory notes are secured by the Debtors' real property located in Bryan, Texas (the "Plant") and, among other things, all of the Debtors' equipment, fixtures, inventory and accessions located at the Plant (all the foregoing, together with the Plant, the "Property").

7.      On July 3, 2014, Compass filed its Motion for Relief from the Automatic Stay with Respect to all Personal Property and Equipment Owned by Debtor [Gunler Foods, Inc.] (Doc. No. 3).

8.      On July 11, 2014, Compass filed its Motion for Agreed Order (I) Modifying Automatic Stay for the Sole Purpose of Permitting Compass Bank to Notice and Advertise its Intent to Conduct a Foreclosure Sale of the Gunler Foods Collateral in August 2014, and (II) Setting Final Hearing on Motion for Relief from Stay (Doc no. 6).  On July 31, 2014, the Court entered an order granting Doc. No. 6, which gave Compass permission to conduct a foreclosure sale of the equipment owned by Foods in August.  However, as is described above, on that same day the Court converted Foods to chapter 7.

9.      On August 29, 2014, Compass and the Trustee filed a Joint Motion for Entry of Agreed Order Terminating Automatic Stay with Conditions (Doc. No. 14).  On September 16, 2014, the Court entered its Agreed Order Terminating Automatic Stay with Conditions (Doc. No.

57) (the "Order Terminating Stay").

10.     The Order Terminating Stay evidenced the agreement between Compass and the Trustee going forward.  Roughly, the terms of the agreement were as follows:  First, Compass gave the Trustee until September 23 to market the Property and obtain a signed letter of intent ("LOI") including the elements of a Qualified Earnest Money Contract with a due diligence period ending by October 9.  If the Trustee failed to obtain such a binding LOI by September 23 (which it did not do), then Compass could foreclose as early as October 7, 2014.  Second, Compass consented to the Trustee to selling the property for not less than $5.7 million; which is far less than the amount of its secured debt.  Third, if such a sale was achieved, Compass would provide a "gift" to the Debtors' estates in the amount of $200,000 out of the cash proceeds, plus 25% of every dollar in excess of the $5.7 million minimum sales price.  Fourth, if these conditions were not met, Compass could foreclose on the Property beginning in November, 2014.

11.     The Trustee has been actively soliciting potential purchasers of the Property since shortly after she was appointed.  Unfortunately, the Trustee was unable to obtain a conforming bid.  However, because the Trustee was having meaningful discussions with various potential purchasers, Compass agreed (in the Order Terminating Stay) to extend by several weeks the deadline by which the Trustee could accept Qualified Bids and close on a sale of the Property.  Moreover, there were several discussions between the Trustee and Compass about the possibility of accepting less than the $5.7 million minimum price.  However, even with these concessions, until very recently no satisfactory offer was presented to the Trustee and Compass[1].

12.     On October 6th, 2014, Kristen Distributing Company ("KDC") made an offer that was accepted by the Trustee with Compass' consent (the "KDC Offer").  A copy of the executed

---

[1] The offers received by the Trustee have ranged from $3.7 million to $4.8 million.

4

LOI for the KDC Offer is attached hereto as Exhibit A.  The KDC Offer provides several meaningful components that appeal to the Trustee and Compass.  The purchase price is $4,600,000, without any financing contingencies.  KDC has also put up a $200,000 cash escrow. The KDC Offer includes no due diligence period, except for confirming good title via a standard title commitment.  Additionally, the KDC Offer provides that KDC will close on or before October 17, 2014.  Finally, when asked, KDC provided the Trustee and Compass with proof of funds.  In order to make the KDC Offer more palatable to Compass, Compass and the Trustee renegotiated the "gift" that was to be provided to the estate from $200,000 down to $150,000. Since Compass had agreed to accept $1.1 million less than what was originally agreed to, the Trustee believed (and still believes) this to be a fair compromise.

13.     On October 3, 2014, shortly after learning about the KDC Offer, a group made up of two former equity holders of the Debtor known as Regal Brands, LLC made an offer of $4,800,000 for the Property (the "Regal Offer").  However, for the following reasons, Compass decided that the Regal Offer was not a better offer than the KDC Offer:

- no proof of funds/ability to close;
- there is no reference to earnest money;
- the allocation of value among real estate and equipment is not accurate;
- it is not clear if Buyer's failure to negotiate a lease with any equipment lessor gives Buyer an out or a basis to reduce the purchase price;
- the offer is conditioned on the managers of Buyer approving the deal.

Based on these deficiencies, and based on the fact that KDC insisted that its offer be accepted immediately or it would be withdrawn, the Trustee and Compass agreed the KDC Offer was the best offer and it should be accepted instead of the Regal Offer.  On October 7, 2014, Regal Brands changed its offer to remove all of the contingencies and to close by October 31. However, based on the fact that the Regal Offer did not provide any additional money to the

estate, the Trustee deferred to Compass' evaluation of the Regal Offer and decided to proceed with the KDC Offer.

## III.
## TERMS OF THE SALE

14.     The material terms of the sale to KDC are as follows:

      **A.**     The property at issue (the "Property") is described as "25 Acres located at 8301 N. State Highway 6, Bryan Texas, 77087," including

- 97,500 square-foot manufacturing plant/warehouse;

- 10,600 square-foot office; and

- all equipment and furniture that secures the notes issued by Compass Bank to the Debtors.

      b.     KDC will pay the Debtors $4.6 million in cash for the Property with no financing contingencies.

      c.     KDC has provided a $200,000 cash escrow to the Trustee.

      d.     The closing will occur on or before October 17, 2014.

      e.     The Seller will obtain a Commitment to Title Insurance and will pay for the owner's policy.

      f.     The Seller will obtain a standard acceptable title commitment.

      g.     The Seller can solicit back-up offers until closing.

15.     A true and correct copy of the fully executed Purchase and Sale Agreement ("PSA") will be filed with the Court no later than 5:00 p.m. on October 15th, 2014.

## IV.
## LEGAL AUTHORITY AND JUSTIFICATION FOR REQUESTED RELIEF

16.     By this Motion the Trustee seeks authority to sell the Property free and clear of all liens, claims and encumbrances (with such liens, claims and encumbrances attaching to the sale proceeds), and respectfully requests that the Court enter an order approving the PSA and

authorizing the Trustee to complete the proposed sale in the manner described herein.

17.    Section 105(a) of the Bankruptcy Code provides, in pertinent part that the court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of the bankruptcy code."  The Trustee believes that, for the reasons set forth herein, the proposed sale of the Property represents a prudent and proper exercise of business judgment.

18.    Section 363(f) of the Bankruptcy Code provides as follows:

(f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

In this case the requirements of Section 363(f) have been met at least under subsections (2) and (5).  The only known liens are the liens of the ad valorem taxing authorities (who will be paid in full from the Sale Proceeds), the blanket liens of Compass Bank (who consents to the sale to KDC), and Castleberry Services who filed a UCC financing statement on certain specified computer equipment.  Castleberry Services has filed a motion to lift the automatic stay seeking authority to collect its collateral and the Trustee does not oppose this motion.

7

19.     As noted above, the KDC Offer was the best offer received at the time the Trustee accepted the KDC Offer, and the Trustee believes it is a reasonable price in the current market and for the condition and state of the Property.   KDC is a third-party buyer with whom the Trustee has no prior connection.  The consideration to be paid for the Property under the terms of the PSA is fair and reasonable under the circumstances and the sale of the Property was negotiated at arms' length.

20.     The Trustee and KDC have entered into the Sale Agreement in good faith.  Courts generally conclude that parties have acted in good faith with respect to a proposed sale if the purchase price is adequate and reasonable and the terms of the sale are fully disclosed. *See, e.g., In re Abbotts Dairies of Pennsylvania. Inc*., 788 F.2d 143, 149–50 (3d Cir. 1988).   These conditions apply to the sale of the Property pursuant to the Sale Agreement.

21.     Finally, Compass has agreed to the terms of the sale.  If no sale of the Property is made, Compass will foreclose on the Property and no funds will be advanced to the Debtors' estates.

22.     At closing, from the net sale proceeds ($4.6 million less pro-rated ad valorem taxes and reasonable/standard closing costs), $150,000 will be paid to the Debtors' estates and the balance shall be paid to Compass Bank (unless the Castleberry Services lien is superior to the Compass Bank lien, in which case the Castleberry Services lien will be paid to the full extent of the value of the computer equipment before the balance is paid to Compass Bank).

## V.
## CAUSE FOR EXPEDITED CONSIDERATION

23.     The LOI provides that KDC will close the sale on or before October 17, 2014.  A quick closing minimizes any potential risk to the Debtors' bankruptcy estates associated with continued ownership and possession of the Property.  Additionally, given that the terms of the

8

KDC Offer provide for a closing by October 17th, expedited consideration is necessary and appropriate.

24.     Federal Rule of Bankruptcy Procedure 6004 provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise. FED. R. BANKR. P. 6004(h). A waiver of such stay with respect to the sale of the Property is appropriate in this instance to minimize any potential risks associated with the continued ownership and possession of the Property and to comply with the terms of the KDC Offer.

25.     The estate has no funds and the Trustee requests that the filing fee be deferred until the conclusion of the estate administration.

26.     For these reasons, the Trustee has determined that entering into the PSA and consummating the sale to KDC is in the best interest of the Debtors' estates.

WHEREFORE, Chapter 7 Trustee Eva S. Engelhart respectfully requests that the Court enter an order (i) authorizing and approving the sale of the Property to KDC free and clear of all liens, claims and encumbrances (with such liens, claims and encumbrances attaching to the sale proceeds), with the net sale proceeds distributed as provided for above; (ii) waiving the 14-day stay imposed by Federal Rule of Bankruptcy Procedure 6004(h) with respect to the sale of the Property; and (iii) granting such other relief as may be just and proper.

DATED: October 9th, 2014.

Respectfully submitted,

**OKIN & ADAMS LLP**

By:   _/s/ Christopher Adams_
      Christopher Adams
      Texas  Bar No. 24009857
      Email: cadams@okinadams.com
      1113 Vine St. Suite 201
      Houston, TX  77002
      Tel: (713) 228-4100
      Fax: (888) 865-2118

**COUNSEL FOR CHAPTER 7 TRUSTEE
EVA S. ENGELHART**